United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRANDON WILLIAMS,
Plaintiff,
v.
ISS FACILITY SERVICES, INC., et al.,
Defendants.

Case No. 26-cv-05756-HSG

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 16

Pending before the Court is the motion to compel arbitration filed by Defendants ISS Facility Services, Inc., Guckenheimer Enterprises, Inc., and individual Karen Hong. Dkt. No. 16. The Court held a hearing on the motion, and for the reasons detailed below, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiff Brandon Williams alleges that from July 2024 to December 2025 he worked as a front-of-house attendant for Defendants in third-party Atlassian's San Francisco corporate office cafe. *See* Dkt. No. 1 ("Compl.") at ¶ 2. Plaintiff alleges that he "was subjected to a sustained pattern of discrimination, harassment, and retaliation," and he ultimately resigned as a result. *See id.* at ¶¶ 3–6.

Beginning in May 2025, Plaintiff contends that he first contacted Defendant Hong, an HR employee for Defendants ISS and Guckenheimer, to complain that coworkers had spoken in Spanish, mentioning Plaintiff's name, even though he does not speak the language. *See id.* at ¶¶ 18, 28–29. Plaintiff contends that this happened on numerous occasions, including on at least one occasion with his supervisor Norma Bernabe. *See id.* at ¶ 30. Shortly after Plaintiff contacted HR about this conduct, he states that his supervisor Ms. Bernabe told him that he could no longer

play music in the kitchen, and he was also issued a "Verbal Coaching (Employee Corrective Action Notice)" for referring to Ms. Bernabe using the word "bitch." *See id.* at ¶¶ 31–33. Plaintiff responded to the Verbal Coaching by explaining that "the actual phrase was bitch, I love you," and that this is "a term of endearment used reciprocally with Bernabe and consistent with the LGBTQ+ community's reclamation of formerly disparaging language." *Id.* at ¶¶ 32–33. Plaintiff also prepared a written response in which he stated that "he felt marginalized and treated as the other because his language and mannerisms differed from the predominantly Spanish-speaking and heterosexual workplace culture." *Id.* at ¶ 33.

Plaintiff states that in June 2025 he also suffered a workplace injury to his back while lifting boxes. *See id.* at ¶ 34. Ms. Bernabe was present, so he listed her in the incident report. *See id.* A couple weeks later, Dan Urban, a regional director who supervised Plaintiff's worksite, reached out to discuss the incident with him. *See id.* at ¶¶ 17, 35. According to Plaintiff, Mr. Urban "repeatedly admonished Plaintiff in masculinity-coded terms" during this conversation, such as telling Plaintiff that he "was a grown man and needed to act like a man." *Id.* at ¶ 35. During this conversation, Mr. Urban similarly said "Plaintiff and [fellow coworker] Humberto were both grown men and should handle their problems like grown men," and that their fellow coworkers should likewise "handle their problems like grown men and should not need to involve Norma Bernabe in their disputes." *Id.* The complaint states that Mr. Urban "had a parallel conversation with Humberto." *Id.* The complaint also states that in other conversations Mr. Urban "characterized Plaintiff as drama and as a dramatic individual." *Id.* Without further explanation, Plaintiff contends that Mr. Urban "directed those characterizations at Plaintiff because of Plaintiff's sex, sexual orientation, and gender expression, and used them to pressure Plaintiff to stop raising discrimination complaints." *Id.*

In August 2025, while washing dishes in the kitchen, Plaintiff states that he got into a verbal altercation with a coworker about whether to keep the kitchen door closed despite the excessive heat. *See id.* at ¶ 36. Plaintiff contends that his coworker "made a smart and nasty remark, to which Plaintiff responded out of frustration, ['F*** you']." *Id.* The coworker responded in kind, and raised his middle finger at Plaintiff. *Id.* Plaintiff states that he was issued



United States District Court
Northern District of California

United States District Court
Northern District of California

a "First Written Corrective Action Notice" for the incident, but the coworker was not disciplined. *See id.* at ¶ 39.

In October 2025, Plaintiff alleges that he re-injured his back while at work. *See id.* at ¶¶ 44–45. Plaintiff's supervisor Juan Medina Munoz told him that he could not return to work until he provided an updated work limitations note. *Id.* at ¶ 46. Plaintiff contends that he reached out for further clarification, and "[n]o interactive accommodation discussion ever followed." *Id.*

In November, Plaintiff apparently returned to work, and Mr. Urban and Defendant Hong approached Plaintiff to speak with him outside on the patio. *See id.* at ¶ 48. Plaintiff said he was recording the conversation, and he walked back into the building after Mr. Urban and Defendant Hong said doing so was against company policy. *Id.* Once inside, Plaintiff told Defendant Hong he was not feeling well and asked if he could go home, and Hong said Plaintiff would have to ask his supervisor. *See id.* at ¶ 49. Plaintiff alleges that Defendant Hong then "placed both her hands on Plaintiff's left arm — her left hand on his forearm and her right hand on his upper arm — without his consent and against his stated objection to being touched as a gay man by a woman." *Id.* Plaintiff immediately went to the kitchen to ask his supervisor Mr. Munoz for permission to go home, and Plaintiff gathered his belongings and clocked out. *See id.* at ¶ 50. Mr. Munoz called Plaintiff a few hours later and said he was "suspended until further notice pending investigation." *Id.* at ¶ 51. Plaintiff said that he later learned that his other supervisor, Ms. Bernabe, had accused him of stealing. *Id.* at ¶ 52.

Plaintiff resigned on December 1, 2025, but states that the resignation was "constructive" because his "working conditions [were] so intolerable that no reasonable employee in Plaintiff's position could be expected to remain." *See id.* at ¶ 53. Plaintiff briefly references a "workers' compensation settlement that coincided with the resignation," but said it "was the only practical mechanism for Plaintiff to escape the intolerable environment." *Id.* Plaintiff further alleges that Defendants reported his separation as a termination to the California Employee Development Department ("EDD"), which disqualified him from unemployment insurance benefits. *See id.* at ¶ 54.

Based on these allegations, Plaintiff brings 21 causes of action, including as relevant here,

United States District Court
Northern District of California

claims for (1) discrimination and hostile work environment on the basis of sex, sexual orientation, and gender expression, under Title VII, 42 U.S.C. § 2000e-2(a); and for (2) discrimination and harassment on the same basis under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940(a), (j). *See id.* at ¶¶ 65–170. Defendants have moved to compel all Plaintiffs' claims to arbitration. Dkt. No. 16.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

## III. DISCUSSION

Plaintiff argues that his case cannot be compelled to arbitration because (1) Defendants

have not established that he assented to any arbitration agreement; and (2) even if he had executed such an agreement, it would be unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"). *See generally* Dkt. No. 18. Because the Court finds the EFAA argument dispositive, it does not address the remaining arguments.

### A. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

Even assuming Plaintiff signed an arbitration agreement, he contends that any such agreement would not be enforceable given the nature of this case. *See* Dkt. No. 18 at 12–16. Specifically, he contends that this case relates to a sexual harassment dispute, giving him the right under the EFAA to elect not to arbitrate the case. *See* 9 U.S.C. § 402(a). The EFAA states in relevant part:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.* at § 402(a). A court, not an arbitrator, must determine whether the EFAA applies. *See id.* at § 402(b). Under the statute, "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* at § 401(4). Plaintiff contends that his Title VII and FEHA discrimination claims constitute "sexual harassment" claims for purposes of the EFAA. *See* Dkt. No. 18 at 14–15.

Defendants do not dispute that a Title VII or FEHA claim *could* be considered a sexual harassment claim for purposes of the EFAA. Instead, they argue that Plaintiff has not plausibly alleged these claims here. *See* Dkt. No. 19 at 6–7. Even construing them in the light most favorable to Plaintiff, as the Court must at this stage, Defendants urge that Plaintiff's allegations do not plausibly allege that Defendants' or their employees' conduct was plausibly related to Plaintiff's sex or sexual orientation. *Id.*

However, the Ninth Circuit recently rejected the argument that sexual harassment allegations must meet the federal pleading standard before the EFAA can apply. *See Holland-*

*Thielen v. SpaceX*, No. 25-4811, 2026 WL 3403297, at *4–9 (9th Cir. Nov. 10, 2026). In *Holland-Thielen*, the court held that it is enough if a complaint contains "an assertion that certain conduct amounted to sexual harassment under applicable law" and "at least one claim premised on" such conduct. *Id.* at *10–11. Moreover, "a plaintiff who successfully invokes the statute (by alleging at least one claim that 'relates to' a sexual harassment dispute) may avoid arbitration of [his] 'entire case' even if not all of the individual claims in her case relate to sexual harassment." *See id.* at *2 (quotation omitted).

In light of *Holland-Thielen*, the Court finds that Plaintiff has properly invoked the EFAA such that any arbitration agreement is unenforceable at this time. Plaintiff alleges that he was harassed based on his sex, sexual orientation, and gender expression under both Title VII and FEHA. For example, Plaintiff alleges that he was sexually harassed when Mr. Urban repeatedly told him to "act like a man," and that Plaintiff was constructively discharged based at least in part on these interactions. *See id.* at ¶¶ 3, 6, 35, 53, 57, 73–77, 84–86. The Court accordingly **DENIES** the motion to compel at this time. Dkt. No. 16. Nevertheless, the Court notes that Defendants may move to dismiss Plaintiff's claims as insufficient to plausibly allege sexual harassment. *See Holland-Thielen*, 2026 WL 3403297, at *9–10. And if Defendants are ultimately successful in dismissing those claims, they may again move to compel arbitration. *Id.*

//

//

//

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

## IV. CONCLUSION

The Court **DENIES** the motion to compel arbitration. Dkt. No. 16. The Court **SETS** a case management conference on December 15, 2026, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://cand.uscourts.gov/zoom. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The Court further **DIRECTS** the parties to submit a joint case management statement by December 8, 2026. The parties should be prepared to discuss how to move this case forward expeditiously.

**IT IS SO ORDERED.**

Dated: November 17, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge